## Grogan & Merz *versus* Adams Express Company.

1. A presumption of negligence on part of an express company arises, where goods shipped by said company are lost in its hands while in course of transportation.

2. An express company cannot, by special contract or special acceptance, limit its liability for loss of goods resulting from the negligence of the company or its servants.

October 30th, 1887. Before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J. and PAXSON, J., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county*: of October Term, 1886, No. 111.

This was an action of trespass on the case by James C. Grogan and A. Merz, partners as Grogan and Merz, against the Adams Express Company.

The plaintiffs in their declaration set out that the defendant is a common carrier of goods for hire between the city of Pittsburgh and Springfield, Massachusetts; that on December 20th, 1883, plaintiffs delivered to defendant and defendant received a certain article of jewelry of the value of one hundred and ninety-eight dollars ($198.00), to be safely and securely carried by said defendant to the city of Springfield; there to be delivered for said plaintiffs. Yet said defendant not regarding its duty as common carrier, but contriving, etc., did not, nor would safely and securely carry and deliver the same, but behaved so carelessly and negligently in the premises that by its carelessness, etc., the jewelry aforesaid was wholly lost to plaintiffs to the damage of plaintiffs, etc.

The defendant pleaded "Not guilty, and the special facts set forth in the affidavits of defence, with leave to add, alter, or amend, at bar."

The affidavit of defence first tenders to plaintiffs, judgment for $50; admits the loss of the goods in transportation and the value, to wit, $198; and sets up a contract between the parties alleged to be contained in the receipt given to plaintiffs by defendant.

After a rule had been taken for judgment for want of sufficient affidavit of defence, a supplemental affidavit was filed, alleging a failure on the part of plaintiffs to give notice in writing to defendant within thirty days of the loss; and alleging that they were bound so to do under another contract in the receipt, and withdrawing the tender already made.

[Grogan & Merz *v.* Adams Express Co.]

The following are the facts of the case as they appeared on the trial before EWING, P. J.

On December 20th, 1883, the plaintiffs, who were engaged in business as jewelers, in the city of Pittsburgh, delivered to the defendant company, for transportation, a small box, containing a lace pin made of gold and diamonds, of the value of one hundred and ninety-eight dollars.   The box was securely packed and plainly addressed to the person for whom it was intended, in the city of Springfield, Massachusetts.   At the time of shipment, the plaintiffs paid all charges asked by the defendant company, for transporting the box to its destination, and received a receipt therefor, from the company, in their receipt book, which was furnished to them by the Express Company; each page of the book is headed " Adams Express Company, Domestic Bill of Lading, Received of Grogan and Merz, the following article, subject to the contract printed below."   Then follows ten blank lines, for date of shipment, value, number of packages, name of consignee, destination, and name of receiver.

The receipt for the package involved in this case is the first one upon the page, and the entries are as follows: " December 20th, 1 package, Miss B. T. Tiffany, 297 Union street, Springfield, Massachusetts, 25 cents paid, J. G. Storen," the receipt also shows the figures $\frac{12}{29}$ in purple ink, interlined after the date, which Mr. Post, the clerk of the Express Company, says are his handwriting, and signify the date of notice of loss, hereafter mentioned.   Then follows nine other receipts for packages shipped at various later dates, and at the bottom of the page in small type, the following words appear: "which it is mutually agreed is to be forwarded to our agency, nearest or most convenient to destination only, and there delivered to other parties, to complete the transportation.   It is part of the consideration of this contract, and it is ˙agreed, that said Express Company are forwarders only, and are not to be held liable or responsible, etc. . . . . . Nor in any event shall the holder hereof demand payment beyond the sum of fifty dollars, at which the article forwarded is hereby valued, unless otherwise herein expressed, or unless specially insured by them and so specified in this receipt, which insurance shall constitute the limit of the liability of the Adams Express Company. .   In no event shall the Adams Express Company be liable for any loss or damage, unless the claim therefor shall be pre-sented to them, in writing, at this office, within thirty days after this date, in a statement to which this receipt shall be annexed."

There was no value marked in the receipt book, and Mr. Sample, the plaintiffs' agent who shipped it, swears positively

that none was asked.    Mr. Storer, the defendants' agent who
received the package, says that he has no recollection of this
package; but that it was his general custom, and a rule of the
company, to ask its value at the time of shipment.    It is ad-
mitted that the value of the package was $198.    On December
29th, 1883, nine days after shipment, the plaintiffs, hearing
from Springfield of the non-arrival of the package, sent Mr.
Sample with the receipt to the Express Company's office, in
Pittsburgh, and he called the matter to the attention of Mr.
Post, the company's agent in such matters, to the fact, and
Mr. Post thereupon wrote the figures $\frac{12}{29}$ referred to, upon the
book.    No other or further notice was, at that time, demanded
by the Express Company, nor, in fact, claimed at any other
time, until after plaintiffs brought their action, and had served
a rule on the defendant, for judgment, for want of a sufficient
affidavit of defence, when, in a supplemental affidavit of defence,
the Express Company withdrew the tender of $50 made in
their original affidavit of defence, and set up the clause printed
on the receipt, requiring notice in writing, within thirty days,
with the receipts annexed.    It was admitted by the witnesses
of the Express Company, that the company acted upon the
notice thus given them, and traced the package as far as Spring-
field, where it was lost.    No explanation was offered by the
company as to how it was lost, or what became of it.

The plaintiffs presented the following points:

1. That the plaintiffs having shown and the defendant (hav-
ing) admitted the loss of the goods, while in the defendant's
hands, in course of transportation, a presumption of negligence
arises; and the alleged condition limiting the defendant's
liability to $50, is no defence in the absence of any evidence
to show that the loss occurred without the fault of defendant.

Answer refused.    (First assignment of error.)

2. That if the jury believe from the evidence that the plain-
tiffs on December 29th, 1883, at the Pittsburgh office of the
defendant, notified the defendant of the loss, and gave to it full
information as to the package, time of shipment, its destination,
and its non-delivery, at the same time producing the receipt
book, and calling defendant's attention to these particulars by
the entry of the package therein; and that defendant did not
request other and further proof, then the plaintiffs have com-
plied with said alleged condition as to notice, and so far as
said alleged condition is concerned, the plaintiffs are entitled
to recover.

Answer refused: under the testimony the above would not
be sufficient to constitute a waiver of the condition.    (Second
assignment of error.)

The defendant presented the following points:

That in no event can the defendant company be held to a greater sum than fifty dollars, as in said contract provided. Affirmed. (Fourth assignment of error.)

The defendant company could limit its liability by special contract. Affirmed. (Fifth assignment of error.)

In the general charge, the court instructed the jury *inter alia* as follows:

In addition, Mr. Grogan, one of the firm, admits that he saw this book frequently, and knew what was in it, and the presumptions are that he saw it, and knew what was in it. Mr. Grogan also knew that there was a higher charge for articles of a higher value than $100, than for an article worth $50. Now, if that be the method of business between that firm and this company, and those the circumstances under which this receipt was given, unless something was said to the contrary, I instruct you that this shipment was under the contract. It was equivalent to Grogan & Merz saying, we give you this package to be shipped under the conditions of the contract, and if it was worth more than $50, it was their business to have the company informed of that fact; there was a greater risk then to the company, and a greater charge for carrying. While it is for you to determine the facts, if I understand the testimony that is uncontradicted, and that being the fact, it makes this the contract under which the defendant incurred the liability, and have rights. Now, there are only two stipulations of this contract that become important in this case. The first is in relation to this limitation of $50. The contract reads, among other things: Nor in any event shall the holder thereof demand beyond $50; at which the article forwarded is hereby valued, unless otherwise herein expressed, or unless specially insured. That, we instruct you is a valuation, and if the circumstances under which the goods were delivered be as testified to, and as I have stated, then it was a binding contract, a determination on the part of these parties as to the value of that package, and governs this transaction, unless the company took and appropriated it to its own use when it would have to pay the whole of it. . . . . . But following the ruling of the Supreme Court of the United States, in a very recent case, I instruct you that this is a limitation of the liability, a valuation of the package that in this contest is conclusive, even though the loss occurred by the negligence of the defendant. (Sixth assignment of error.)

Verdict for the plaintiff in the sum of $56.18, and judgment thereon, whereupon the plaintiff took this writ, and filed *inter alia* the above assignments of error.

*William R. Blair.*—That a common carrier cannot limit his

[Grogan & Merz *v.* Adams Express Co.]

liability in a case where the loss occurs through his negligence by a notice contained in a receipt, such as was given in this case, is a proposition well established in the law of Pennsylvania; Bullman *v.* Shouse, 5 Rawle, 179; Goldey *v.* R. R. Co., 6 Cary, 242; American Ex. Co. *v.* Sands, 5 P. F. S., 140; Farnham *v.* R. R. Co., 5 Id., 53; R. R. Co. *v.* Butler, 7 Id., 335; P. R. R. *v.* Henderson, 1 Id., 315; Empire Co. *v.* Warmcastle, 13 Id., 14; Colton *v.* C. & P. R. R., 17 Id., 211; Patterson *v.* Clyde, 17 Id., 500.

The court instructed the jury that it was the plaintiff's business to inform the express company of the value of the goods, when it has been expressly declared by this court, more than once, that it is not the duty of the shipper to disclose the value of the goods unless he is asked; Relf *v.* Rupp, 3 W. & S., 26; C. & A. R. R. *v.* Baldaux, 4 Harris, 67; Brown *v.* R. R., 2 Norris, 315.

The learned court below says, in his opinion, that he is following a recent decision in the Supreme Court of the United States—the case referred to is, Hart *v.* Penn. R. R., 112 U. S., 331, but a single glance at that case will show its difference and inapplicability to the present case.

*T. S. Parker* for defendant in error.—That the *onus* of establishing negligence should rest upon the plaintiff is a proper condition of the power to limit liability, by a special contract, and is, I think, established authority; Harris *v.* Packwood, 3 Taunton, 264; Marsh *v.* Horne, 5 Barn. & Cress., 322; Marsh *v.* Stude, 9 Carr & Payne, 380; Clark & Co. *v.* Spencer, 10 Wall., 335; Goldey *v.* Penna. R. R. Co., 6 Casey, 246; Patterson *v.* Clyde, 17 P. F. S., 500.

That the court charged the jury correctly as to the "thirty day notice," and that the same is *reasonable* and *proper*, see Weir *v.* Adams Ex. Co., 5 Phila., 355; Express Co. *v.* Caldwell, 21 Wall., 264.

The receipt though signed only by the defendants, was accepted at the time, and given in evidence at the trial, by the plaintiff, is the best, if not the only evidence of the agreement under which the goods were delivered, of the duty of defendants to carry them safely, and of the liability of the plaintiffs for freight. The plaintiff must be presumed to have known what it contained, and was guilty of a wilful omission if he did not. The clause in question is therefore part of the contract of affreightment, and binding on the plaintiff, if valid in law; Squire *v.* New York Central R. R. Co., 98 Mass., 239; Hopkins *v.* Wescott, 6 Blatch., 64; Belger *v.* Dinsmore, 51 N. Y., 166; Oppenheimer *v.* United States Ex. Co., 69 Ill., 62; Maginn *v.* Dinsmore, 56 N. Y., 168, 62, 35, 70; Earnest *v.* Express Co., 1

[Grogan & Merz *v.* Adams Express Co.]

Woods, 573; Elkins *v.* Empire Transportation Co., 81* Pa. St.
R., 315; South and North Ala. R. R. Co. *v.* Heinlein, 52 Ala.,
606; Musser *v.* Holland, 17 Blatch., 412; Harvey *v.* Terre
Haute R. R. Co., 74 Mo., 528; Graves *v.* Lake Shore R. R. Co.,
137 Mass., 33.

Mr. Justice GREEN delivered the opinion of the court,
November 17th, 1886.

In the case of Farnham *v.* The Camden and Amboy Railroad
Company, this court decided that a common carrier might, by
a special contract, and perhaps by notice, limit his liability for
loss or injury to goods carried by him, as to every cause of
injury except that arising from negligence. In that case, there
was a special contract signed by the receiving clerk of the
carrier company, expressed in the receipt given to the shipper,
limiting the responsibility of the carrier to $100 for every 100
lbs. freight, the shipper declining to pay for any higher risk.
The goods were carried to their destination, unloaded upon
the carrier's wharf, and there destroyed by fire. Although
the goods were still in the carrier's custody at the time of the
loss, it was held that unless it was proved that the fire was the
result of the carrier's negligence, there was no liability beyond
the amount limited in the receipt given by the carrier. But it
was also held, that if there had been proof of such negligence,
the limitation would not have restricted the carrier's liability.
Under the particular facts of the case, the common carrier, by
force of the special contract, became a private carrier, or bailee,
whose liability was to be judged by the terms of the contract.
Not being an insurer therefore, as a common carrier, it was held
that there was no liability beyond the amount stipulated in
the bill of lading, except for negligence, and that the burden
of proving the negligence rested upon the shipper. In de-
termining that it was a case of special contract, much stress
was laid upon the fact that the bills of lading, duly executed
and signed by the agents of the defendants, containing the
limitation, were delivered to the plaintiffs, accepted by them
and remitted to their agent in New York, as his authority to
receive the goods, and that " these, therefore, were the terms
on which the transporters shipped their goods, and on which
they were received to be transported." In determining the
question of negligence, it was held that the proof of loss by an
accidental fire was a sufficient accounting for the non-delivery
of the goods, and that unless the shipper could prove that the
fire was the result of negligence there was no liability beyond
the limited amount fixed by the contract.

In the case of the American Express Co. *v.* Sands, reported
also in 5 P. F. S., at p. 140, the doctrine was repeated, that

common carriers may limit their liability by a special contract, or special acceptance of the goods, and thus become subject to the laws of bailment only, but that there could be no limitation of liability where the loss or injury resulted from the negligence of the company or its servants. The article carried was a saw, and on its arrival at its destination it was cracked eight to ten inches. There was no evidence to show how this injury was sustained, and hence it was held there arose a presumption of negligence which it was the duty of the carrier to rebut, or be held liable for the full value of the saw, notwithstanding the limitation of $50 liability expressed in the freight receipt, given to the shipper. THOMPSON, J., said, "Had they been able to have shown a *prima facie* case of injury, without fault on their part, they would not have been liable beyond the limit fixed, unless the plaintiff could have established negligence against the company as to the manner of the injury; but their silence was reconcilable with nothing but negligence or wilfulness, either of which would be followed by liability to the full extent of the loss." The doctrine of these two cases is precisely alike on the fundamental proposition that liability could be limited by special contract, but not for negligence. In the one case the carrier escaped liability because he accounted for the destruction of the goods in a manner which did not impose liability without express proof of negligence. In the other case, the carrier was held liable because he did not account for the injury, and a presumption of negligence arose which he did not rebut.

How is it in the case at bar? We think it must be conceded that by the terms of the express receipt, signed by the company's agent, and delivered to, and accepted by the plaintiffs, the article shipped was valued at fifty dollars, and the company limited its liability to that sum, and this limitation would be a protection against liability beyond that amount, except for negligence. It is a contract almost precisely similar to the one upon which we passed, in the case of the American Express Company v. Sands, *supra*, but is stronger than that in favor of the carrier, because it contains an express agreement that the article forwarded was valued at $50, which the receipt in the Sands case did not. But the express company in the present case failed to account for the non-delivery of the article, and hence a presumption of negligence arose, which they should have rebutted in order to escape liability, but they did not do so. It was error, therefore, in the learned court below to refuse an affirmance of the plaintiff's first point, which is a mere declaration of the ruling of this court in the Sands case.

In addition, however, to this, the learned court further charged the jury that the defendant could limit its own liability,

4 AMERMAN —34

even as against its own negligence, and had done so by the receipt given to the plaintiffs when the goods were shipped.

This was done in obedience to a decision of the Supreme Court of the United States, in the case of Hart *v.* The Penn. R. R. Co., 112 U. S. Rep., 331. An examination of that case shows that such is the law as declared by that court, and if the decision were of binding authority upon us we would be obliged to follow it. But our own decisions for a long time have established the opposite doctrine, until it has become firmly fixed in our system of jurisprudence. We could not depart from it now without overruling them all, and we are not willing to do so. The authorities upon the general subject are very numerous and conflicting. But with us the rule has been uniform and we prefer to adhere to it. Entertaining these views, we reverse the case upon the first, fourth and sixth assignments of error. The fifth is not sustained, because as a general proposition the defendant's third point is undoubtedly true. We say nothing as to the second and third assignments, because, as there must be another trial, the questions arising under them may come before us under a different aspect.

Judgment reversed, and a *venire de novo* awarded.