## HERMAN WEILLER v. PENNSYLVANIA R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 1 OF PHILADELPHIA COUNTY.

Argued March 25, 1890—Decided April 21, 1890.

A condition in a bill of lading that, "when a valuation as agreed upon shall be named upon this shipping receipt, it is distinctly understood that such valuation shall cover loss or damage from any cause whatever," will not relieve a common carrier from liability for the actual value of goods lost in transit through the carrier's negligence: Grogan v. Express Co., 114 Pa. 523, followed; Elkins v. Transportation Co., 81* Pa. 315, distinguished.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 420 January Term 1889, Sup. Ct.; court below, No. 356 September Term 1887, C. P. No. 1.

On October 15, 1887, Herman Weiller brought trespass against the Pennsylvania Railroad Company, claiming, in the statement of claim filed, to recover the value of four barrels of whiskey (less forty-five gallons) delivered to the defendant on June 15, 1887, by Moore & Sinnott, at Belle Vernon, Pa., for transportation to the plaintiff, the owner and consignee at

Philadelphia, and "totally lost and destroyed in transit upon said railroad of defendant, by reason of the negligence and carelessness of defendant." Issue.

At the trial on February 20, 1889, the plaintiff put in evidence the bill of lading, dated June 15, 1887, acknowledging the receipt from Moore & Sinnott of ten barrels of whiskey, consigned to the plaintiff, the bill showing, stamped in red ink: "$20 per barrel Valuation. O. R. L."—subject "to all the conditions following and upon the back of this receipt."

The bill of lading contained the following conditions printed upon the back thereof:

"And in case of loss from any cause within the carrier's reasonable control, [the carrier] shall pay for the same at the net invoice price, freight charges added if paid, unless a lower value of the articles has been agreed upon with the shippers, and such value noted hereon, or same is determined by the classification upon which the rates are based, and, in case of damage through the negligence of the carrier's servants, shall pay a just assessment of same, the carrier to have the full benefit of any insurance that may have been effected upon or on account of said goods. . . . .

"The carrier shall not be liable for loss or damage by causes beyond its reasonable control, by fire from any cause and wheresoever occurring, by riots, strikes or stoppages of labor, or by any of the causes incident to transportation, such as chafing, heating, freezing, leakage, rust, or any other reason not directly traceable to the negligence of the carrier's servants. . . .

"And, finally, in accepting this shipping receipt, the shipper, owner and consignee of the goods, and the holder of the shipping receipt, agree to be bound by all its stipulations, exceptions and conditions, whether written or printed, as fully as if they were all signed by such shipper, owner, consignee or holder.

"When a valuation as agreed upon shall be named upon this shipping receipt, it is distinctly understood that such valuation shall cover loss or damage from any cause whatever."

The plaintiff then introduced testimony showing that he had received six of the barrels of whiskey shipped by the foregoing bill of lading; that inquiry was made of the office clerk of defendant at Sixteenth and Market as to the four barrels not de-

Charge of Court below.

livered, and the clerk said he did not know anything about them, and sent the plaintiff's employee to the station platform to see if he could find them; that on the platform one barrel was found, but there was nothing of it but the staves and the heads; one with the head mashed in; another partly broken; while the fourth barrel had not arrived at all. Out of the four barrels, forty-five gallons of whiskey were obtained. The plaintiff put in evidence the actual value of the whiskey, and a letter from the claim agent of the defendant company, in reply to a demand made for the whiskey lost, in which it was stated that the whiskey having been lost in a wreck upon the Philadelphia division, it was covered by the terms of the bill of lading, and the company declined to settle for the full value.

The defendant adduced evidence that the " $20 per bbl. Valuation. O. R. L." were put upon the bill of lading by the consignor; that " O. R. L." meant " owners risk leakage;" that, without the valuation, the rate charged would have been thirty-three cents per hundred; with it, the rate actually charged was twenty-eight cents per hundred.

At the close of the testimony, the court, BREGY, J., charged the jury:

Under my view of this evidence and the papers in the case, I instruct you to find for the plaintiff the value of the whiskey, less the freight; that is, $257.27, less $11.77, with interest thereon.[1] [2]

I refuse the following points of the defendant:

1. A common carrier is entitled, by agreement with the shipper, and in consideration of an undertaking to transport merchandise at a low rate of freight, to limit its liability by fixing a value upon the merchandise beyond which it cannot be held responsible. This having been done in the present case, there can be no recovery beyond the value of the whiskey fixed in the bill of lading, to wit, $20 per barrel.[3]

2. Under all the evidence in this case, there can be no recovery by the plaintiff beyond the amount of $20 per barrel for the barrels of whiskey not delivered, with interest upon that amount from the date when the delivery should have taken place. [4]

Opinion of the Court.

The jury returned a verdict for the plaintiff for $271.20. Judgment having been entered, the defendant took this appeal, assigning for error : 1, 2. The instruction to find for the plaintiff.[1] [2]    3, 4. The refusal of the defendant's points.[3] [4]

*Mr. Geo. Tucker Bispham*, for the appellant.

Counsel cited : Elkins v. Transportation Co., 81* Pa. 315 ; Hart v. Railroad Co., 112 U. S. 331 ; Forepaugh v. Railroad Co., 128 Pa. 217 ; Manchester etc. R. Co. v. Brown, L. R. 8 H. L. 703.

*Mr. Edward H. Weil*, for the appellee.

Counsel cited : Mynard v. Railroad Co., 71 N. Y. 180 (27 Am. Rep. 28) ; Nicholas v. Railroad Co., 89 N. Y. 370 ; Navigation Co. v. Bank, 6 How. 383 ; Farnham v. Railroad Co., 55 Pa. 53 ; American Exp. Co. v. Sands, 55 Pa. 140 ; Penna. R. Co. v. Miller, 87 Pa. 395 ; Grogan v. Express Co., 114 Pa. 523 ; Penna. R. Co. v. Raiordan, 119 Pa. 577 ; Penna. R. Co. v. Henderson, 51 Pa. 315 ; Empire Transportation Co. v. Oil Co., 63 Pa. 17.

OPINION, MR. JUSTICE GREEN :

In the case of Elkins v. Transportation Co., 81* Pa. 315, no question of negligence, or of the carrier's right to limit his liability for his acts of negligence, was raised, discussed, or decided, either in the court below or in this court. The reporter says the cause of action set out in the declaration was the loss of certain high wines delivered to defendant, but lost by negligence. This is the only reference to the subject of negligence to be found in the entire report of the case. The record shows that the case was not tried upon any theory of negligence, but exclusively upon the terms and interpretation of the contract as contained in the bill of lading. No question was made upon the subject of the right of the carrier to limit his liability for loss occurring by his own negligence, and we are bound to assume that the facts of the case did not give rise to such a question. Nothing was said upon that subject, either in the argument of counsel, or in the charge of the court below, or in the opinion of this Court. It was for this reason that no reference was made to this case in the opinion of this Court in

Opinion dissenting.

the case of Grogan v. Express Co., 114 Pa. 523. The same reason is applicable now. It may be that the accident in the Elkins Case was not the result of any negligence of the carrier. Judging from the names of the counsel concerned, it is almost certain that if the facts had developed a case of negligence, and the question of the right of the carrier to limit his liability for acts of negligence, that question would have been promptly raised, discussed, and decided.

In the present case, the question does arise under the conditions annexed to the bill of lading. Many enumerated causes of loss are expressly excepted, such as fire, riots, strikes, heating, freezing, leakage, rust, etc., and as to these the right of the company to limit its liability must be affirmed in accordance with numerous decisions of this and other courts. But the final clause of the conditions stipulates that, " when a valuation as agreed upon shall be named upon this shipping receipt, it is distinctly understood that such valuation shall cover loss or damage from any cause whatever." As this necessarily includes loss arising from negligence, and as the testimony tended to establish a loss by negligence, the question of the efficacy of the clause under consideration to relieve the company from liability for negligence, beyond the agreed value, necessarily arises. Upon that subject we have so recently expressed ourselves in the case of Grogan v. Express Co., supra, that we think it unnecessary to repeat either the text or substance of the opinion there announced. So far as the question at issue is concerned, we can see no difference between that case and this.

Judgment affirmed.

OPINION DISSENTING, MR. JUSTICE MITCHELL:

To allow a shipper to value his goods for purposes of freight charges, etc., at one price, and then, when they are lost, to recover as in this case three times his own agreed value, is a direct premium on fraud, such as no court ought to sanction. The public policy which prohibits a common carrier from contracting against the negligence of his employees, or to express it in commercial language, the rule which prohibits a shipper from becoming his own insurer against accidental loss, if he so chooses, by paying a lower rate of freight, was founded upon a condition

of things which has passed away, and the rule itself should, in my opinion, be materially modified, if not abrogated altogether, in regard to goods. That, however, is an alteration of the law which is legislative in its scope, and cannot properly be made by the courts. I am therefore in favor of adhering to the rule as far as it has been settled by the decisions, but would not extend it in the slightest degree. In this case, the public were offered two plans, a full liability at a regular rate, or a stipulated maximum liability at a reduced rate. The plaintiff with full knowledge chose the latter. Upon the reasonableness of such a regulation, the argument of Lord BLACKBURN in Manchester etc. Ry. Co. v. Brown, L. R. 8 App. Cas. 703, 712, is, in my judgment, unanswerable: " When there has been a rate fixed, if it be shown in point of fact that, although people can have their goods reasonably carried at that rate, they do enter into agreements of this sort to have them carried at another rate, that is extremely strong evidence that the agreement is reasonable." Instead of " extremely strong," I should say " conclusive." The observations of Lord BRAMWELL, in the same case, are also worthy of careful reading.

Because I believe this case to be a step beyond the previous decisions on the subject, I am compelled to dissent from this judgment.