# S. M. Willock *v.* Pennsylvania R. ·R. Co., Appellant.

### [Marked to be reported.]

*Contracts—Common carriers—Bill of lading—Stipulation for insurance—Public policy—Release of liability for negligence.*

A common carrier cannot stipulate for a release from the consequences of his own negligence or fraud.

A stipulation in a bill of lading that is intended to protect a common carrier in the violation of his contract as a carrier, and in disregarding a settled rule of public policy, will not be sustained.

A clause in a bill of lading is void, as against public policy, which stipulates that the owner, shipper and consignee severally shall cause the goods to be fully and sufficiently insured and shall look for compensation therefor only to said insurance, and in case of loss the carrier shall have the benefit of such insurance, if such loss "shall occur from any cause which shall be held to render this line or any of its agents liable therefor."

In such a case where the shipper fails to insure, and the goods are lost by the negligence of the carrier, the shipper may recover the amount of the loss.

Argued Oct. 24, 1894. Appeal, No. 84, Oct. T., 1894, by defendant, from order of C. P. No. 3, Allegheny Co., May T., 1892, No. 584, making absolute a rule for judgment for want of a sufficient affidavit of defence. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule for judgment for want of sufficient affidavit of defence in assumpsit to recover the value of sixty barrels of petroleum shipped by plaintiff from Oil City to Richmond, Virginia.

Plaintiff's statement averred that the oil was lost by reason of defendant's negligence. Plaintiff attached to and made part of his statement the bill of lading under which the oil was shipped, the sixth clause of which was as follows:

"Sixth. In further consideration of the hazardous nature of such merchandise (whereby the cars, tanks and other property of the line are endangered), and that no extra charge is made for transporting it, the owner, shipper and consignee hereby severally stipulate and agree, that they will cause it to be properly; fully and sufficiently insured from loss or damage by fire, and, in the event of such loss or damage, that they will

look for compensation or reimbursement therefor only to the said insurance; but if such loss or damage shall occur from any cause which shall be held to render this line or any of its agents liable therefor (which is hereby declared to be contrary to the intentions of the parties thereto), it is hereby further expressly agreed that this line shall have the benefit of such insurance, and the owner, shipper and consignee severally agree that it shall be so inserted in the policy of insurance."

The affidavit of defence set up the loss by fire, and averred that plaintiff had failed to insure as he agreed to do in the above paragraph.

Rule for judgment absolute, in opinion by McClung, J.

*Error assigned* was above order, quoting it.

*Geo. B. Gordon, William Scott* with him, for appellant.— A carrier, as bailee, has an insurable interest in the property: Richards on Ins. 35; Ostrander on Fire Ins. 155.

He may insure the property to its full value, and recover the same from the insurance company: Richards on Ins. 37; Ostrander on Fire Ins. 155.

And if he so insures, neither the negligence of the carrier nor of its employees, though the proximate cause of the fire, will be any defence to the policy: Richards on Fire Ins., p. 29, § 22; Ins. Co. v. Insley, 7 Pa. 223; Ins. Co. v. Adams, 123 U. S. 67; Ins. Co. v. Erie etc. Ry., 117 U. S. 312.

The carrier would be justified in charging a higher rate for the transportation of the oil than that ordinarily required, by reason of the extra risk incurred through the liability of loss from fire, that is, a compensation for insurance in addition to compensation for the carriage.

The goods were destroyed by fire under circumstances which plaintiff had bound himself to insure against. He did not take out any insurance, and particularly insurance in which it was stipulated in the policy that the carrier, in case of loss arising from causes which should render the carrier liable to him therefor, should have the benefit of the same. This prima facie constituted a valid contract to procure insurance. The decisions of this court are uniform to that effect from Miner v. Tagert, 3 Bin. 204; Tartar Co. v. French, 154 Pa. 273. In

Frauenthal v. Derr, 13 W. N. 485, there was no consideration. Here the consideration was a lower rate of freight.

Every principle necessary for the decision of this case, it seems to us, has been decided by the Supreme Court of the United States in Ins. Co. v. Erie etc. Ry., 117 U. S. 312. See also Ins. Co. v. Morse, 150 U. S. 99; Ins. Co. v. Union Compress Co., 133 U. S. 387; Ry. v. Ins. Co., 84 Tex. 149; Ry. v. Zimmerman, 81 Tex. 605; Ry. v. Scruggs, 69 Miss. 418; Ry. & Banking Co. v. Reid, 91 Ga. 377.

The real fallacy in the position of the court below is in assuming any hard and fast rule on the subject of "public policy" without reference to the circumstances and facts of the particular case. Those things only are contrary to public policy which are contrary to the public good: Greenwood on Public Policy, 2.

To hold that a person may, for a valid consideration, agree to perform part of the duties of another, and having neglected to do so, hold that other liable for a loss resulting to himself, upon the ground that the contract was contrary to the public good, is to go far beyond any precedent. The rule is enforced only where there is a reason for its enforcement founded on public policy: R. R. v. Baldauf, 16 Pa. 67; Farnham v. R. R., 55 Pa. 53; Patterson v. Clyde, 67 Pa. 500; Grogan & Merz v. Express Co., 114 Pa. 523; Ins. Co. v. Union Compress Co., 133 U. S. 387; Ins. Co. v. Insley, 7 Pa. 230.

The English courts have uniformly said that in determining the question of limitations of the liability of the carrier all the circumstances must be regarded, and not any mere definition: Lewis v. Ry., L. R. 3 Q. B. Div. 179; Rooth v. Ry., L. R. 2 Ex. 173; Passmore v. Tel. Co., 78 Pa. 238; Tel. Co. v. Stevenson, 128 Pa. 455; Primrose v. Tel. Co., 154 U. S. 1; Weiller v. R. R., 134 Pa. 310.

*James S. Young, S. U. Trent* with him, for appellee.—The agreement is void because it seeks to avoid the liability of the carrier for his own negligence: Express Co. v. Sands, 55 Pa. 140; Powell v. R. R., 32 Pa. 414; Goldey v. R. R., 30 Pa. 242; Grogan & Merz v. Express Co., 114 Pa. 523; R. R. v. Raiordon, 119 Pa. 577; Ins. Co. v. Erie etc. Tr. Co., 117 U. S. 312; R. R. v. Lockwood, 17 Wall. 357; R. R. v. Pratt, 22

Wall. 123; Bank v. Adams Express Co., 93 U. S. 174; Ry. v. Stevens, 95 U. S. 655.

The cases cited by counsel for appellant from other states, go uniformly only to the extent of asserting the principle that the carrier has an insurable interest in the goods, and that he is entitled to the benefit of any insurance that may have been obtained voluntarily by the shipper. But an examination of these cases will show that in nearly every case the negligence of the carrier was excepted in any limitations stated in the bill of lading.

N. P. Ry. v. Ins. Co., 84 Texas, 149, is to the effect that the carrier may stipulate in his contract for the benefit of any insurance that may have been effected upon the goods to be transported. R. R. v. Zimmerman, 81 Texas, 605, is to the same effect.

Ry. v. Scruggs, 69 Miss. 418, was to the effect that the stipulations in the bill of lading were against causes not resulting from negligence of the carrier, and that the carrier was not guilty of negligence in causing the loss, it having been caused by self-inflicted injuries of the animals carried, which was the very thing stipulated against in the bill of lading.

Ry. & Banking Co. v. Reid, 91 Ga. 377, is to the effect that the stipulation was that the drover shipping the cattle should provide a person to accompany the stock, and that the injury to the stock was caused by the want of such person, and in no wise by the negligence of the company.

Conceding that the cases in the United States Court and the cases cited by counsel for appellant in the other states do sustain the principle contended for here, those cases are not binding upon this court: Grogan & Merz v. Express Co., 114 Pa. 523; Laing v. Colder, 8 Pa. 479; Pa. R. R. v. Raiordon, 119 Pa. 577.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 21, 1895:

Who shall be deemed a common carrier, and what are the nature and extent of his undertaking, are questions that were settled centuries ago upon common law principles. A common carrier is bound to employ safe and sufficient means of carriage, trustworthy and competent servants, and, by himself or his agent, to exercise an intelligent supervision over the system of

carriage which he employs.   He is therefore, to all intents and
purposes, an insurer against such perils of transportation as it
is his duty to provide against; and these include all the perils
of the journey except such as arise from " the act of God or the
king's enemies."

Our forefathers brought this definition of the duties of a
common carrier with them, when they came to this continent,
and its outlines remain substantially the same to this day.
Some limitations upon his common law liabilities have been
sustained to protect the carrier against unjust and fraudulent
claims on the part of customers; but the measure of care due
from him to those whom he serves has not been abated in the
slightest degree.   He is still held to be an insurer against such
perils as it is his duty to provide against, and among these are
such as arise from the use of defective or inadequate instru-
ments of carriage, and from the employment of incompetent, neg-
ligent or criminal servants.   Farnham et al. v. The Camden
and Amboy Railroad Company, 55 Pa. 53.

What are commonly spoken of as limitations of the liability
of the carrier and have been upheld by the courts of this state
as such, are, when carefully considered, undertakings of the
shipper implied from the nature of the contract and enforced
against him at the instance of the carrier.   Thus a stipulation
that the carrier shall not be liable to the shipper for the loss of
certain packages in a greater sum than that named in the receipt
or bill of lading, unless the actual value of the package was
fully disclosed to the carrier when it was delivered to him, so
that he might know the amount of risk involved and charge
accordingly, has been upheld, because good faith on the part of
the shipper requires such full disclosure by him.   So also if the
contents of a package are perishable, or easily broken, or explo-
sive, so that the danger of loss is increased and the exercise of
an unusual degree of care is made necessary, good faith requires
the shipper to make the facts known to the carrier; and a fail-
ure to do so ought to affect the extent, and in some cases the
right, of recovery for the loss of goods so shipped.

The carrier is relieved in these cases, not from the duty to
exercise care and diligence in the transportation of his cus-
tomer's goods, but from the consequences of the failure of the
shipper to advise him fully of facts and circumstances material

to the contract, the suppression of which is in effect a fraud upon him. His obligations as a common carrier are not reduced. He is bound to the exercise of great care by the nature of his undertaking. He must not be negligent. It is against public policy that he should be. It is also a violation of his contract, which is to carry safely. A stipulation that is intended to protect him in the violation of his contract as a carrier, and in disregarding a settled rule of public policy, will not be sustained. The cases in which this doctrine is recognized and applied in this state are very numerous. Among them may be named the following: Beckman et al. v. Shouse, 5 R. 179; Bingham v. Rogers, 6 W. & S. 495; Laing v. Colder, 8 Pa. 479; Goldey v. The Railroad Company, 30 Pa. 242; Powell v. The Railroad Company, 32 Pa. 414; Am. Express Company v. Sands, 55 Pa. 140; Railroad Co. v. Miller, 87 Pa. 395; Grogan et al. v. Adams Express Co., 114 Pa. 523; Penna. Railroad Co. v. Raiordon, 119 Pa. 577; Western Union Telegraph Co. v. Stevenson, 128 Pa. 442; Phoenix Pot. Works v. The Railroad Co., 139 Pa. 284; Buck v. The Penna. Railroad Co., 150 Pa. 171.

It is a sufficient answer to an argument in favor of changing the rule in Pennsylvania and permitting carriers to stipulate for a release from the consequences of their own negligence or fraud, that the question is not an open one. It has been settled by the cases cited and many others, and we are bound by the rule stare decisis. The attempt to overturn the common law doctrine fixing the liability of carriers was made in England by act of Parliament. The result is, after several statutes upon the subject, that the carrier may make a contract limiting his liability on two conditions. The first is that the contract be actually signed by the shipper. The second is that the courts shall adjudge the limitation to be " just and reasonable." This works no substantial change in the law. It makes a contract for carriage of persons or property tripartite. The carrier and the shipper are the ostensible parties, but the public, as represented by the courts of law, is the third party and may refuse its consent to stipulations on which carrier and shipper have agreed. When such a contract comes before the courts the question is, not what terms have the parties incorporated into their agreement, but are the terms so incorporated " just and reasonable," so that they ought, on grounds of public policy,

to be enforced ? In determining this question the courts have been constrained to apply common law principles and hold that to be just or unjust which was so held at common law. Thus in McManus v. The Railway Co., 4 H. & N. 327, the contract provided that the live stock shipped over the defendant's railroad should be carried at the risk of the owner, and that the company should in no case be liable for any loss or injury sustained. The contract was signed by the shipper but the court held it to be both unjust and unreasonable and refused to enforce it. In Kirby v. The Railway Co., 18 L. T. (N. S.) 658, the contract provided that the carrier should not be liable for injury to the goods shipped occasioned by delay, no matter what the cause of the delay might be. The courts, representing the public, the third party to the agreement, declined to give assent and held the provision relieving the carrier from the consequences of his own negligence to be unjust and unreasonable. Still nearer to the question in the case before us is Peck v. The Railway Co., 10 H. L. Cases, 473. The carrier in that case had a contract with the shipper containing a stipulation that he should not be liable for loss of the goods unless their value was declared at the time of the delivery of the goods to him, and they were then insured to their full value by the shipper. This was held to be neither just nor reasonable and its enforcement was refused. The courts of England have thus held in substance that the public have a greater interest in the transportation of persons and property than any individual shipper, and that public policy requires of a common carrier the exercise of constant care over his vehicles or means of transportation, and over his servants and employees in charge of them. They further hold that it is against the public good that he should be allowed to contract for immunity from the consequences of his own negligence or fraud, or the negligence or fraud of his employees ; and that stipulations to that effect are incapable of enforcement because unjust and unreasonable.

The Supreme Court of the United States holds to the same doctrine upon this subject as the courts of Pennsylvania : Railroad Co. v. Lockwood, 17 Wall. 357 ; Steamship Co. v. Phœnix Ins Co., 129 U. S. 397.

The public is interested in securing the highest measure of safety in the transportation of passengers and goods, and to

this end public policy requires that common carriers be held to the highest measure of care in the conduct of their business. Greenhood in his treatise on Public Policy, 573, says: " It is obvious therefore that if a carrier stipulate not to be bound to the exercise of care and diligence but to be at liberty to indulge in the contrary, he seeks to put off the essential duties of his employment; and to assert that he may do so seems almost a contradiction in terms."

The carrier and the shipper do not stand on equal terms. The latter cannot afford to refuse that which the carrier demands as a condition to the transportation of his goods, and in ninety-nine cases out of every hundred, if he does so refuse he will find himself discriminated against until his business is ruined and he has nothing left to ship. The rule that stipulations, insisted on by carriers or other persons who stand in such a position towards their customers as enables them to compel compliance with their demands or destroy their customer's business, should be judged of by their fairness and be held void whenever they are unreasonable or oppressive, is one of very general acceptance. Public policy compels its acceptance in all civilized countries.

The learned counsel for the appellant cite Phœnix Ins. Co. v. Erie Transportation Co., 117 U. S. 312, as tending to sustain their contention. But an examination of that case shows that it was begun by libel filed by the insurance company asking subrogation to the rights of the shipper against the carrier. The first question to be determined was, therefore, what could the shipper recover upon the facts of that case? He had contracted that any insurance he might obtain should enure to the benefit of the carrier. He obtained insurance on the goods shipped, suffered a loss, and was paid the insurance money. The question presented on these facts was whether the right of the shipper to recover against the carrier was not extinguished to the extent to which his loss had been paid by the insurer? If so, subrogation must necessarily be refused, and it was refused for this reason. This point was elaborated in Provident Insurance Company v. Morse, 150 U. S. 99, in which it was said that in case of loss the carrier is primarily liable to the shipper, and the position of an insurer is substantially that of a surety. The insurer can recover, therefore, after payment

of a loss by subrogation to the rights of the shipper and upon no other ground; so that whatever amounts to an extinguishment of the right of action of the shipper against the carrier, must defeat the insurer's right to subrogation. The general proposition that the surety who pays the debt of his principal succeeds only to the rights of the creditor whom he pays is beyond all doubt; and in Phœnix Ins. Co. v. Erie Transportation Co. it was held to be applicable to contracts that, as we have seen, are tripartite, having the public as a third though unnamed party.

In the case at bar the carrier inserted in its bill of lading a stipulation that the owner, shipper, and consignee severally shall cause the goods to be fully and sufficiently insured, and that in case of loss the carrier shall have the benefit of such insurance if such loss "shall occur from any cause which shall be held to render this line or any of its agents liable therefor." No insurance was effected. A loss occurred as the result of a collision by two of the carrier's trains. The shipper sues to recover the amount of his loss. The only defence set up is under the condition in the bill of lading; and the question raised is, will the courts compel the performance of a contract between shipper and carrier requiring the shipper to protect the carrier against the consequences of its own negligence? There is no doubt about the carrier's having an insurable interest in the goods, or about his right to protect himself from loss by procuring a policy of insurance for that purpose, but the question here presented is, can he compel the shipper to insure the goods for his benefit? If so he can compel the shipper to release him entirely, and so stipulate for complete immunity from the consequences of the negligence and fraud of himself or of his servants and employees. This, in the language of the English courts, would be "unjust and unreasonable." In the language of our own cases it would be "contrary to public policy." The thought is the same. Our own mode of expressing it is preferable, in this, that it suggests the reason on which the rule rests.

The judgment is affirmed.