## Thomas McCabe Industries v. Pennsylvania Railroad Co.

*Jones & Lewis*, for plaintiff.
*F. E. Baldwin* and *W. K. Sweatland*, for defendant.

HECK, P. J., April 20, 1928.—In this action the plaintiff seeks to recover from the defendant damages to three carloads of furniture which, it is alleged, were caused by the negligence of defendant.

At the trial, it was disclosed that on Feb. 18, 1926, one car, and on Feb. 20, 1926, two cars, of furniture were delivered to the Coudersport & Port Allegany Railroad, the destination being Pittsburgh. The cars were promptly delivered to the Pennsylvania Railroad Company at Port Allegany, and a few days afterwards were delivered to the consignees at Pittsburgh, the route from Port Allegany to Pittsburgh being over the railroad lines of the defendant.

Immediately upon their arrival the cars were opened, when it was discovered that the finish of the furniture in all the cars was damaged. It seems to be agreed that the damage was to the varnish or finish on the furniture and was caused by moisture.

At the trial, the plaintiff showed the loading of the furniture, the delivery of the cars to the defendant company and the damage. The plaintiff by so doing made out a *prima facie* case of negligence against the defendant under the rule as stated by Henderson, J., in the case of Vuille *v.* Pennsylvania R. R. Co., 42 Pa. Superior Ct. 567: "A presumption of negligence arises which is sufficient to justify a recovery in cases where there is no other proof than of the delivery of the goods to the carrier in good condition and their arrival at the point of destination in a damaged condition: American Express Co. *v.* Sands, 55 Pa. 140; Grogan & Merz *v.* Adams Express Co., 114 Pa. 523; Buck *v.* Pennsylvania R. R. Co., 150 Pa. 170, and the rule seems to prevail generally that when goods are delivered to the first carrier in good order and are afterwards injured, the presumption, in the absence of anything to the contrary, is that they were injured by the last carrier: 4 Elliott on Railroads, § 1450; 5 Thompson on Negligence, § 6569; Cote *v.* N. Y., N. H. & H. R. R. Co., 182 Mass. 290. At the conclusion of the plaintiff's evidence, the burden was, therefore, on the defendant to overcome the presumption of negligence. . . . The presumption of negligence arising from the plaintiff's evidence could,

of course, be rebutted, but this was the defendant's burden, and whether it was successfully done was a question for the jury under all the evidence."

The defendant assumed the burden of overcoming the presumed negligence. It introduced evidence tending to show the imperfect and unworkmanlike finish of the furniture at the factory of the plaintiff and also that the crating in which the furniture was packed was not dry or properly seasoned and was unfit for the purposes of crating, and that this caused or contributed to the damage complained of.

There was also offered in defense the explanation that the damage to the furniture was caused by sweating or moisture condensation, for the control of which there was no practical method known to railroad companies.

The jury returned a verdict in favor of the plaintiff, and defendant now moves for a new trial. Three reasons are set forth to sustain the motion:

1. After-discovered evidence.

2. That the verdict of the jury was against the weight of the evidence, the charge of the court, and a total disregard of the uncontradicted evidence offered by the defendant.

3. That the court erred in answering defendant's third point in charging the jury.

Considering these complaints in their order, the ground for a new trial based upon the after-discovered evidence is contained in an affidavit made by F. E. Baldwin, one of the counsel for defense. It set forth that witnesses have been found who will testify relative to the damp or wet condition of the lumber used for the crating of the furniture, alleging that this evidence was unknown to the defendant at the time of the trial and by reasonable diligence could not have been obtained by it.

By stipulation filed, it was agreed that if the witnesses had given evidence under the rule to take depositions, they would testify to the facts as set forth in Senator Baldwin's petition and affidavit.

Certain well-established rules have been laid down by our courts relative to after-discovered evidence as a reason for a new trial. In Moore v. The Philadelphia Bank, 5 S. & R. 41, Chief Justice Tilghman says: "A new trial has been moved for on the ground of material evidence discovered since the trial. Motions of this kind ought to be received with great caution, because there are few cases tried in which something new cannot be hunted up, and because it tends very much to the introduction of perjury to admit new evidence after the party who has lost the verdict has had an opportunity of discovering the points both of his adversary's strength and his own weakness. It is, therefore, incumbent on him who asks for a new trial on this ground to satisfy the court, first, that the evidence has come to his knowledge since the trial; second, that it was not owing to want of due diligence that it did not come sooner, and, third, that it would probably produce a different verdict if a new trial were granted."

In addition to this, the Supreme Court, in the case of Com. v. Flanagan, 7 W. & S. 415, states: "Thus a great deal of testimony has been given which does not establish independent facts material to the issue; but its only effect is to impeach the credit of some of the witnesses examined on the former trial. But the rule of law is that the testimony must go to the merits of the case and must not be merely for the purpose of impeaching the testimony of the witnesses. For newly-discovered evidence discrediting witnesses who testified on a former trial, a new trial will never be granted: Graham on Trials, 496; 10 Wendell, 492. So cumulative evidence, by which is meant additional evidence to support the same point, or where it is of the same character

as evidence already produced, is not sufficient to induce the court to grant a new trial: 10 Wendell, 285. Some of the evidence is cumulative merely, which, of course, would be a decisive objection to the motion on that ground."

Considering the defendant's motion in the light of these decisions, it is recalled that at the trial it swore two witnesses as to the character of the lumber used in the crating, which testimony was met by a number of witnesses, sworn in rebuttal by the plaintiff, whose testimony tended to establish a state of facts differing materially from those testified to by the witnesses of the defendant. The new evidence offered is clearly cumulative.

Nor are we convinced that this testimony could not have been found had the defendant used due diligence in its search for evidence to support its defense that the damage to the furniture was caused by the wet or damp condition of the crating.

We do not think the business of the plaintiff as a furniture company was hedged about with such secrecy that its employees whose business it was to crate the furniture and handle the lumber for that purpose could not have been found by the use of due diligence, and, further, if the newly-discovered evidence were presented at another trial, considering the nature and character of the evidence of the plaintiff opposed to it, we very seriously doubt whether another jury would render a different verdict. It appears to us very clear that a new trial cannot be granted on the ground of after-discovered evidence.

The second reason refers to the disregard by the jury of the evidence presented by the defendant explaining the injury to the furniture by reason of sweating or precipitation on it of an undue amount of moisture.

Counsel for defendant calls our attention to the well-established rule as stated by Justice Mitchell in Lonzer *v.* Railroad Co., 196 Pa. 610, as follows: "It is further said that the testimony as to the posting of the notice and the deceased's knowledge of it was by witnesses for the defense and their credibility was for the jury. Such, certainly, is the general rule. The jury are not bound to believe every story that a witness or witnesses are willing to swear to simply because no other witness contradicts it. If its inherent improbability or irreconcilability with facts shown or admitted are such that it does not command their assent, the jury may disregard it. But this rule is founded on common sense and knowledge of human nature and must be limited by the same standards. When the testimony is not in itself improbable, is not at variance with any proved or admitted facts or with ordinary experience, and comes from witnesses whose candor there is no apparent ground for doubting, the jury is not at liberty to indulge in a capricious disbelief. If they do so, it is the duty of the court to set the verdict aside."

Also, in Holden *v.* Pennsylvania R. R. Co., 169 Pa. 1, the same court says: "When juries are so palpably regardless of their duty and of the sanctity of their oaths that they permit their verdicts to be rendered in obedience to their prejudices or their sympathies, as is too often the case, the trial courts should deal with them in a firm and decisive manner and should reject their erroneous verdicts without the least hesitation or delay."

It is under the law as stated in these and other decisions of the Supreme Court to the same effect that the defendant asks us to set aside the jury's verdict. The evidence referred to, briefly stated, is as follows:

It is uncontradicted by any testimony that at the time the cars were loaded they were inspected as to their being water-proof by an employee of the plaintiff. Shortly after the arrival of the cars in Pittsburgh, they were carefully examined for the same purpose by employees of the defendant, and all

the witnesses agree that there was no evidence that any of the cars leaked water. The explanation was then advanced by the defendant that the damage was caused by sweating, or the condensation of moisture on the furniture. To sustain this theory, G. W. Judd was sworn, who testified that he was and had been an employee of the defendant for over twenty-five years and that during the past three or four years it was his duty to investigate the responsibility of the defendant for damages alleged to have been caused by its negligence in transportation of commodities.

He testified that he could find no leak in the cars, but that in one of them there was evidence of moisture having gathered on its sides. Just when this occurred, he could not tell. There was no evidence of moisture having gathered in the other two cars. He explained how it was possible for condensation to occur in cars from different causes; one being moisture from wet or damp lumber used as crating, and another the change of the outside temperature as compared with the temperature in the cars. As to the condensation being the cause of the damage, in reply to counsel's question, "Mr. Judd, what caused the condition you found on your examination?" he answered, "I would say moisture condensation probably had something to do with it, but I don't believe that was all that caused it."

He further stated that when he examined the furniture there was no dampness on the furniture nor on the paper in which it was packed.

From this quotation and his statements relative to the cause of the damage, Mr. Judd, it is apparent, had no knowledge from his own observation as to the source of the dampness that caused the injury to the furniture, but he simply advanced a theory or opinion as to how this might have occurred, with the further explanation that if it did occur in this manner, there was no method known to railroad companies whereby the sweating or moisture condensation could be avoided.

His testimony was that of an expert, and, under objection by the plaintiff, was admitted as such.

From the character of his testimony relative to the damages being caused by sweating, and the fact that Mr. Judd was an employee of the defendant, we are of the opinion that the credibility and force of the testimony, even though uncontradicted, was entirely for the jury, and any disregard by it of the testimony on the question of damage through sweating cannot be held by the court as such a lapse of duty as to warrant a new trial.

The last reason has but little merit. We were asked to say, by the defendant's third point: "If the jury find from all the evidence in the case that the damage to the furniture in question was the result of condensation of moisture inside the car, the plaintiff cannot recover and the verdict should be for the defendant."

At the time of the trial, we were of the opinion that the defendant would not be relieved from the presumption of negligence by showing alone that the damage was caused by sweating or condensation of moisture, and for this reason, we refused the point.

We were of the opinion that, in addition to this, it should appear that there was no practical method whereby the defendant company could avoid damage to the furniture from this cause, and we charged the jury: "The burden rests upon it to prove by a fair preponderance of evidence that it was not only caused by sweating, but the condition was an act of nature beyond the control of the defendant, and for the prevention of which there was no practical means known to transportation railroads."

We can see no inconsistency in our answer to the defendant's point and this charge. We accepted the law as to the defendant's point, but simply added that, before the defendant could avoid liability, he must also show that there was no known method whereby the sweating of the car could be controlled and damage to the furniture avoided.

For the reasons given, we think the motion for a new trial should be refused.

And now, April 20, 1928, defendant's motion for a new trial is refused.

From R. R. Lewis, Coudersport, Pa.