# Wright *v.* Adams Express Company, Appellant.

*Carriers—Common carriers—Limitation of amount of liability—Interstate commerce—Act of congress of June 29, 1906, 34 Statutes at Large, 584.*

1. The Pennsylvania rule that a common carrier cannot contract for exemption from, or limitation of liability arising from his negligence or that of his servant, is applicable to commerce between Pennsylvania and other states, and the contrary rule permitting a limitation of liability applied by the federal courts is not binding upon the courts of this state in the absence of congressional action upon the subject.

2. The act of congress of June 29, 1906, 34 Statutes at Large, 584, requiring carriers to reduce the contract for transportation to writing, and enacting certain other rules for the regulation of interstate commerce, is not such congressional legislation as will require the courts of Pennsylvania to follow the rule laid down by the federal courts that a carrier may limit his liability to an agreed valuation in consideration of a lower rate for carriage.

*Carriers—Common carriers—Valuation of goods—Fraud—Bills of lading.*

3. Where an owner of goods delivers them to a carrier through an agent, and the agent in response to an inquiry states that he does not know the value of the goods, and the bill of lading is stamped "value asked and not given;" and it appears that neither the shipper nor his agent knew the minimum rate and the carrier has no knowledge of the value of the goods, the shipper cannot be charged with fraud for paying a minimum rate on goods of a greater value than that on which the minimum rate is charged.

Argued Oct. 21, 1909.  Appeal, No. 192, Oct. T., 1909, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1908, No. 2,392, for plaintiff on case stated in suit of Daisy Wright v. Adams Express Company.  Be-

fore RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.    Affirmed.

Case stated to determine liability for loss of furs.

The case stated was as follows:

It is hereby agreed by and between the parties in the above-entitled action that the following case be stated for the opinion and decision of the court in the nature of a special verdict.

On November 18, 1907, plaintiff, a resident of Philadelphia, was the owner of a long fur coat and a muff made of brown " Japanese sable," which she had bought from O'Hara, an importer, of New York City, for $350.  Desiring to send the coat and muff to O'Hara for repairs, she packed them in a box, wrote on it the destination— "O'Hara, 11 East 48th Street, New York City"—and gave it to James Nelson, her chauffeur, giving him no instructions except that he was to send it to the addressee by express.  Nelson did not know the value of the contents of the box.

Nelson took the box and its contents to the office of the defendant at 1413 Chestnut street, Philadelphia, and there delivered it to one Stivers, defendant's receiving clerk.  Stivers, who was ignorant of the value of the shipment, asked Nelson its value, and Nelson said he did not know the value.  Thereupon Stivers stamped "Value asked and not given" in red ink on a bill of lading, filled in the other blanks, signed it and gave it to Nelson, who paid forty cents, the express charges demanded.  A copy of the bill of lading marked exhibit "A" is attached hereto and made a part hereof.  Nelson subsequently gave said receipt to the plaintiff.  She did not know at the time the amount charged by the defendant in this case.

Defendant has never delivered the box to O'Hara or returned it to plaintiff.

Plaintiff made proper claim and demand upon defendant for the loss of the furs.

On November 18, 1907, and before and after that date the regular rate established and in force on defendant's line of transportation for carrying furs of the weight of those shipped from Philadelphia to New York was forty cents if their value was $50.00 or under, and sixty cents if their value was $350.

These rates were included in the schedules filed by defendant with the Interstate Commerce Commission at Washington and printed and posted at the office of the defendant at 1413 Chestnut street, Philadelphia, in accordance with the provisions of the United States statute entitled, an act to regulate commerce, approved February 4, 1887, and its amendments and supplements. But neither the plaintiff nor Nelson had actual knowledge that the defendant had a published schedule of rates, or what the defendant's actual rates were, but she did know that the express charges were based on the value and that more was charged if the shipment was valued. Plaintiff and Nelson had often shipped packages by defendant company, but neither of them knew the provisions of the bill of lading.

On November 18, 1907, and before and after that date a shipment valued at over $50.00 was handled differently by defendant from one not so valued, in the following respects, to wit: the value was written on the face of such shipment and on the waybill which accompanied it; such a shipment was handled both at the initial office and at the delivering office in a special department called the "valuable room"; from its receipt by defendant until its delivery to consignee, it was at all times under the personal custody of a particular employee; each employee who handled such a shipment gave a receipt to the person from whom he received it and took a receipt from the person to whom he gave it; none of which things was done in the case of a shipment not so valued. This method of handling was adopted solely for additional security and for the purpose of giving to a shipment of particular value the care which its value warranted.

If the court be of opinion that plaintiff is entitled to recover from defendant the full value of the said furs, then judgment shall be entered in her favor for $350 with interest· from November 18, 1907, and costs. If the court be of opinion that the recovery should be limited to $50.00, then judgment shall be entered for plaintiff for that amount without costs. If the court be of opinion that the judgment should be for defendant, a judgment for defendant shall be entered and costs assessed.

The judgment of the court shall be· subject to review by either party hereto by appeal or by writ of error.

The court entered judgment for plaintiff for $350 on the case stated.

· *Error· assigned* was in entering judgment·for plaintiff.

*John Lewis Evans*, with him *Thomas DeWitt Cuyler*, for appellant.

*G. W. Pepper*, with him *W. B. Bodine, Jr.*, for appellee.

OPINION BY HENDERSON, J., July 20, 1910:

This appeal involves a consideration of the effect of the interstate commerce legislation on the liability of a common carrier for damages for negligence on a contract for the carriage of goods from Pennsylvania to the state of New York. The plaintiff sued to recover the value of a consignment of furs delivered to the defendant in Philadelphia for carriage to New York City. The bill of lading contained the following provision: "1. In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for

more than fifty dollars if no value is stated herein." The package was not delivered to the consignee nor accounted for and the court entered judgment on the case stated in favor of the plaintiff for $350, the value of the goods, notwithstanding the limitation of liability in the contract. One of the facts agreed upon was that on November 18, 1907, and before and after that date the regular rate established and in force on defendant's line of transportation for carrying furs of the weight of those shipped from Philadelphia to New York was forty cents if their value was $50.00 or under and sixty cents if their value was $350. It was also agreed that when the plaintiff's servant delivered the package of furs to the defendant, the agent of the latter inquired what the value of the package was and the servant not knowing the value stated that he did not know; whereupon the agent stamped on the bill of lading delivered to the plaintiff's servant, "Value asked and not given." The appellant contends (1) that the liability of a carrier for loss of goods shipped in interstate commerce under a contract containing an agreement as to the value of the goods should be determined by the law as announced in the decisions of the supreme court of the United States and not according to the rule adopted by the Supreme Court of this state, because of the provision of the interstate commerce legislation requiring a carrier to issue a receipt or bill of lading to the shipper and making such carrier liable to the holder of the receipt for loss or damage. It is conceded that it is the well established law of this state that a common carrier cannot contract for exemption from, or limitation of, liability arising from his negligence or that of his servant. This doctrine has its foundation in considerations of public policy which hold that contracts permitting a common carrier to relieve himself from the obligation to take care of the property committed to his custody tend to encourage guilty negligence: Camden & Amboy R. R. Co. v. Baldauf, 16 Pa. 67; Cole v. Goodwin, 19 Wend. 251; R. R. Co. v. Lockwood, 84 U. S. 357. The nature of the carrier's un-

dertaking imposes on him the obligation to exercise a high degree of care and a contract which has the effect to protect him when he has committed a breach of duty and which disregards a well-defined rule of public policy cannot be enforced. There are many cases in this state which apply this doctrine as will be seen by an examination of Powell v. R. R. Co., 32 Pa. 414; American Express Co. v. Sands, 55 Pa. 140; Penna. R. R. Co. v. Raiordon, 119 Pa. 577; Buck v. Penna. R. R. Co., 150 Pa. 170; Willock v. R. R. Co., 166 Pa. 184; Eckert v. Penna. R. R. Co., 211 Pa. 267. And with reference to this rule no distinction has been made between transactions involving interstate carriage and those in which the transportation was wholly within the state. Grogan v. Adams Express Co., 114 Pa. 523; Willock v. R. R. Co., 166 Pa. 184; Hughes v. Penna. R. R., 202 Pa. 222, and Eckert v. Penna. R. R. Co., 211 Pa. 267, were all cases in which shipments were made from one state to another. The decisions of the federal courts have applied a different rule. They sustain the doctrine of the common law that a carrier may not contract for exemption from liability for his own negligence but hold valid an agreement with the shipper limiting his liability to the agreed valuation in consideration of a lower rate for carriage, the shipper at the same time to have the privilege to insist upon the carrier's liability for the full value of the property on payment of the price of transportation charged according to such value: Hart v. R. R. Co., 112 U. S. 331; such limitation of liability being regarded as a lawful means of protection to the carrier against excessive valuation and a proper method of securing a due proportion between the amount for which the carrier is responsible and the freight paid. And it is this rule which the appellant asks to have applied here. It is conceded that the law on the subject as announced by the supreme court of the United States is not binding on the courts of this state unless congress has legislated on the subject in the act of June 29, 1906, 34 Statutes at Large, 584. Prior to that enactment it had been decided by the supreme court of

the United States that a statute of a state or rule of law established by the courts of a state declaring void any contract of a common carrier exempting him from, or limiting his liability for, negligence was not in conflict with the legislation of congress on the subject of interstate commerce: Penna. R. R. Co v. Hughes, 191 U. S. 477. Such a statute or rule of law has for its object the protection of people of the state in the enjoyment of their rights of property and to secure for them adequate redress for wrongs done within the state and this is clearly within the authority of the state. Common carriers like other persons doing business within the territorial jurisdiction of the state are subject to its law. And in each of the states there are to be found statutes and judicial decisions defining the rights and duties of such carriers and declaring the means by which persons injured by their failure to perform their obligation may be compensated in damages. It was accordingly held in Chicago, etc., Ry. Co. v. Solan, 169 U. S. 133, that a carrier exercising his calling within a particular state although engaged in the business of interstate commerce is answerable according to the laws of the state for acts of nonfeasance or misfeasance committed within its limits and that on failure to deliver goods at the time and place the right of action is given by the local law. That was a case in which a limited liability contract was set up by the railroad company in an action for personal injury received by the plaintiff while engaged in transporting cattle on the defendant's railroad; a statute of the state of Iowa declaring that no contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from the liability of a common carrier or carrier of passengers which would exist had no contract, receipt, rule or regulation been made or entered into. To the same effect are Smith v. Alabama, 124 U. S. 465; New York, etc., R. R. Co. v. New York, 165 U. S. 628; Railroad Co. v. Husen, 95 U. S. 465; Hughes v. Penna. R. R. Co., 202 Pa. 222. The conclusion of these cases was reached in

accordance with the doctrine that the regulation of the rights and duties of all persons under the jurisdiction of the state belongs in the first instance to the state because of its reserved power to provide for the safety of the persons and property within its territory and that this right is not taken away from it because of the exclusive right of congress to regulate interstate commerce except in cases where the attempted exercise of authority in a state is in conflict with an act of congress or is an attempt to regulate interstate commerce.    In Martin v. R. R. Co., 203 U. S. 284, Mr. Justice WHITE after reviewing some of the federal cases bearing on the subject said, "The result of the previous rulings was to recognize in the absence of action by congress the power of the states to legislate and of course this power involved the authority to regulate as the state might deem best for the public good without reference to whether the effect of the legislation might be to limit or broaden the responsibility of the carrier." These are not in themselves regulations of interstate commerce although they control in some degree the conduct and liability of those engaged in such commerce.    It is plainly decided in the case of Hughes v. R. R. Co., 202 Pa. 222, that the interstate commerce legislation up to that time did not control the statutes or decisions of the courts of the states as to the validity of contracts limiting liability for negligence.    But the appellant argues that the act of congress of 1906 has that effect inasmuch as it provides "that any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill-of-lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby im-

posed: provided that nothing in this section·shall deprive any holder of such receipt or bill-of-lading of any remedy or right of action which he has under existing law." The apparent purpose of this amendment was to require the carrier to reduce the contract for transportation to writing and to give the·holder thereof prima facie title to the property; to render the first carrier liable to the·lawful holder of the receipt or bill of lading for any loss caused by such carrier or by any connecting carrier over whose line or lines such property may pass and to forbid exemption of such carrier by contract from the liability imposed by the act. We are unable to discover in the language of this amendment any evidence of an intention to change the rule of law theretofore existing with reference to the measure of damages to which a carrier might be subjected in an action for negligence. The provision for a receipt or bill of lading was evidently to enable the shipper to have the best evidence of the terms of his contract and to avoid controversy as to the title to the property shipped. No form of receipt is prescribed nor is any other liability created than that which makes the first carrier responsible for loss occurring anywhere on the line of shipment. This is a provision in aid of the shipper intended to meet the difficulty often experienced of determining on what part of a route over connecting lines a loss occurred and rendering invalid a contract with the first carrier in which liability for loss is limited to a loss occurring on the line of that carrier. But this has nothing to do with the measure of damages which is the important subject in this appeal. It was said in Penna. R. R. v. Hughes, 191 U. S. 477, that the interstate commerce laws contained no sanction of agreements limiting liability to stipulated valuations and that until congress shall legislate upon it there is not any valid objection to a state enforcing its own regulations upon the subject although it may to this extent indirectly affect interstate commerce contracts of carriage; and in Chicago, etc., Ry. Co. v. Solan, 169 U. S. 133, the court referring to rules prescribed for the construction and management of

railroads and designed to protect persons and property said, "They are not in themselves regulations of interstate commerce although they control in some degree the conduct and the liability of those engaged in such commerce. So long as congress has not legislated upon the particular subject they are rather to be regarded as legislation in aid of such commerce and as a rightful exercise of the police power of the state to regulate the relative rights and duties of all persons and corporations within its limits." To the same effect is McLean v. Denver, etc., R. R. Co., 203 U. S. 38. It cannot be successfully contended that a statute or rule of law of a state declaring what shall be the measure of damages for the breach of a contract of a common carrier to deliver goods to a destination in another state is in any proper sense a regulation of interstate commerce or violative of the constitution of the United States or any law of congress. It may be conceded that congress might legislate upon the particular subject and give validity to contracts limiting the carrier's liability, but until such action has been taken the statutes or rules of law of the respective states are in force and we are not persuaded by the careful and exhaustive argument of the counsel for the appellant that the amendment of 1906 was intended to at all affect the subject of the right of a common carrier engaged in interstate commerce to contract for exemption from liability for his own negligence or to limit his liability with reference thereto. In every undertaking of a carrier there is a contract either expressed or implied and at the time of the enactment of the amendment referred to the custom was perhaps general on the part of carriers to give receipts or bills of lading for the goods accepted for transportation. If congress had intended to prescribe the terms or declare the effect of such a document except as specifically set forth in the statute it is reasonable to suppose that such intention would have been plainly expressed. If the act have that effect the intention can only be ascertained by processes of interpretation and reasoning which are not convincing.

As the subject is a plain one and adequate language was at command it seems evident that no such decisive change of the law as is contended for by the appellant could have been contemplated. The intention was not to abridge the rights of shippers but to correct defects in the preceding legislation by reason of which they were placed at a disadvantage. This appears not only from the body of the enactment but also from the proviso continuing to shippers any remedy or right of action had under existing law. The appellant insists that the words "remedy or right of action" in the proviso have reference to the method of procedure and do not relate to the cause of action, but the enactment bears on the rights of shippers and not on the legal processes by which their rights might be enforced and was apparently intended to hold fast the law as it existed with the addition of the enlarged rights given to shippers and the increased liability imposed on the carrier. It is in this sense we think that the term "right of action" is used by Mr. Justice GRAY in Ry. Co. v. Solan, 169 U. S. 133, and by Mr. Justice WHITE in Martin v. R. R. Co., 203 U. S. 284. The language of the proviso admits the interpretation that the holder of a shipping receipt is permitted to exert his cause of action for a negligent wrong in transportation by a common carrier in the method and with the result allowed according to the law existing at the time the amendment was enacted. Our attention is directed by the appellant to the case of Tullock v. Mulvane, 184 U. S. 497, as a controlling authority. That was an action on an injunction bond filed in the circuit court of the United States for the district of Kansas in a proceeding in equity. Such proceedings in courts of equity of the United States are regulated by rules adopted and promulgated by the Supreme Court under the power given it by congress and it is under one of these rules that the courts of the United States proceed in requiring indemnity bonds and granting injunctions. The decision was based on the reasoning that the bond was given with reference to the rules of law applicable to such

bonds in the United States courts; that the contract was with reference to a definite rule of liability and that there could be no certain general rule by which to determine such liability except as administered in the federal court; that the court has the inherent right to set the bond aside and to determine in its discretion whether recovery could be had upon it. If the obligor's liability could be measured in other courts according to a different standard from that which controlled in the court which had directed the bond to be given, it might occur that although the latter court had decreed that the injunction was rightfully issued, nevertheless in an action on the bond a state court might hold otherwise and thus subject the obligor to liability without redress. The liability of the obligors was determinable according to the measure of liability existing in the court where the bond was given, and the parties must be presumed to have contracted according to the law there prevailing. It followed as a consequence that the law of the state of Kansas which permitted the recovery of counsel fees under such a bond could not prevail against the decisions of the federal courts that such a charge was not costs within the meaning of the obligation. There the rule of court and the order of the chancellor determined the character of the bond and the extent of its obligation. The amendment of 1906 to the interstate commerce legislation has no such effect. It neither prescribes the form of a bill of lading nor fixes the measure of liability thereunder.

The second position for which the appellant contends is that the shipper obtained transportation at less than the regular rate by undervaluing the goods and that the contract is therefore illegal and that at most recovery could not be had for more than the value on which the freight charge was paid. If a case were presented of one who had fraudulently obtained an undervaluation of goods in order to secure a lower transportation charge the question would be one worthy of serious consideration, but the facts agreed upon do not furnish a foundation for the ar-

gument presented.   The shipper did not know that the appellant had an advertised schedule of rates nor what the appellant charged in this case at the time the goods were received nor what the provisions of the shipping bill were.   Her agent transacted the business in her absence. She did know that express charges were based on the value of the goods, but it does not appear that she knew what the minimum value to be carried at the fixed charge was. Nor do the facts stipulated show any fraudulent conduct or intention to deceive on the part of the plaintiff's servant.   He had no knowledge of the published schedule of rates nor what the rates were, nor did he know the conditions set forth in the bill of lading.   He told the truth when he informed the defendant's agent that he did not know the value of the furs.   When he gave that statement no further inquiry was made on the subject and the goods were promptly receipted for without knowledge on the part of the company of their value.   The facts leave no room, therefore, for argument on the theory of a deception practiced by the plaintiff.   There was no thought in the mind of the plaintiff or of the defendant of accepting or granting a concession or preference in the matter of rates. It would work a great hardship on many innocent shippers to hold that where one in good faith delivered his goods to a carrier for interstate transportation and paid the rate demanded without knowledge of the schedule of rates or what the rate actually was he rendered himself powerless to insist in a legal tribunal that he have his goods or their value.   If the plaintiff had seen the shipping receipt when the goods were received by the defendant she could not have learned therefrom that she was getting a lower rate than was given to others under like circumstances.   Preferences were forbidden by the interstate commerce legislation in force at the time the amendment of 1896 was adopted, but this did not prevent a recovery in Penna. R. R. v. Hughes, 191 U. S. 477.   Our conclusion is that the courts of this state have not been deprived by the interstate commerce legislation of the power to enforce the doctrine

established in this state that the contract of a common carrier limiting his liability for negligence is contrary to public policy and therefore void.

The judgment is affirmed.