Wright *v.* Adams Express Company, Appellant. Davidson *v.* Adams Express Company, Appellant.   Blackburn *v.* Adams Express Company, Appellant.

*Carriers—Common carriers—Limitation of amount of liability—Interstate commerce—Act of Congress of June 29, 1906, 34 Statutes at Large, 584.*

1. The Pennsylvania rule that a common carrier cannot contract for exemption from or limitation of liability arising from his negligence or that of his servant, is applicable to commerce between Pennsylvania and other states, and the contrary rule permitting a limitation of liability applied by the federal courts is not binding upon the courts of this state in the absence of congressional action upon the subject.

2. The Act of Congress of June 29, 1906, 34 Statutes at Large, 584,

requiring carriers to reduce the contract for transportation to writing, and enacting certain other rules for the regulation of interstate commerce, is not such congressional legislation as will require the courts of Pennsylvania to follow the rule laid down by the federal courts that a carrier may limit his liability to an agreed valuation in consideration of a lower rate for carriage.

Argued Jan. 12, 1911. Appeal, No. 282, Jan. T., 1910, by defendant, from judgment of Superior Court, Oct. T., 1909, No. 192, affirming judgment of C. P. No. 2, Phila. Co., March T., 1908, No. 2,392, for plaintiff on case stated in suit of Daisy Wright v. Adams Express Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

See 43 Pa. Superior Ct. 40.

Appeal, No. 283, Jan. T., 1910, by defendant, from judgment of Superior Court, Oct. T., 1909, No. 87, affirming judgment of C. P. No. 1, Phila. Co., March T., 1907, No. 1,701, on verdict for plaintiff in case of Abe Davidson, trading as Davidson & Son, v. Adams Express Company. Affirmed.

See 43 Pa. Superior Ct. 53.

Appeal, No. 284, Jan. T., 1910, by defendant, from judgment of Superior Court, Oct. T., 1909, No. 95, affirming judgment of C. P. Chester Co., Aug. T., 1907, No. 101, on verdict for plaintiffs in case of Ephraim Blackburn and Joseph S. Townsend, trading as Blackburn & Townsend, v. Adams Express Company. Affirmed.

See 43 Pa. Superior Ct. 276.

Appeals from Superior Court.

HENDERSON, J., filed the following opinion in Wright v. Adams Express Co.:

This appeal involves a consideration of the effect of the interstate commerce legislation on the liability of a common carrier for damages for negligence on a contract for the carriage of goods from Pennsylvania to the state of New York. The plaintiff sued to recover the value of a

consignment of furs delivered to the defendant in Philadelphia for carriage to New York city. The bill of lading contained the following provision: "1. In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein." The package was not delivered to the consignee nor accounted for and the court entered judgment on the case stated in favor of the plaintiff for $350, value of the goods, notwithstanding the limitation of liability in the contract. One of the facts agreed upon was that on November 18, 1907, and before and after that date the regular rate established and in force on defendant's line of transportation for carrying furs of the weight of those shipped from Philadelphia to New York was forty cents if their value was $50.00 or under and sixty cents if their value was $350. It was also agreed that when the plaintiff's servant delivered the package of furs to the defendant, the agent of the latter inquired what the value of the package was and the servant not knowing the value stated that he did not know; whereupon the agent stamped on the bill of lading delivered to the plaintiff's servant "Value asked and not given." The appellant contends, first, that the liability of a carrier for loss of goods shipped in interstate commerce under a contract containing an agreement as to the value of the goods should be determined by the law as announced in the decisions of the supreme court of the United States and not according to the rule adopted by the Supreme Court of this state, because of the provision of the interstate commerce legislation requiring a carrier to issue a receipt or bill of lading to the shipper and making such carrier liable to the holder of the receipt for loss or damage. It is conceded that it is the well-established law of

this state that a common carrier cannot contract for exemption from or limitation of liability arising from his negligence or that of his servant. This doctrine has its foundation in considerations of public policy which hold that contracts permitting a common carrier to relieve himself from the obligation to take care of the property committed to his custody tend to encourage guilty negligence.: Camden & Amboy R. R. Co. v. Baldauf, 16 Pa. 67; Cole v. Goodwin, 19 Wend. 251; Railroad Co. v. Lockwood, 84 U. S. 357. The nature of the carrier's undertaking imposes on him the obligation to exercise a high degree of care, and a contract which has the effect to protect him when he has committed a breach of duty and which disregards a well-defined rule of public policy cannot be enforced. There are many cases in this state which apply this doctrine as will be seen by examination of Powell v. R. R. Co., 32 Pa. 414; American Express Co. v. Sands, 55 Pa. 140; Penna. R. R. Co. v. Raiordon, 119 Pa. 577; Buck v. Penna. R. R. Co., 150 Pa. 170; Willock v. R. R. Co., 166 Pa. 184; Eckert v. Penna. R. R. Co., 211 Pa. 267. And with reference to this rule no distinction has been made between transactions involving interstate carriage and those in which the transportation was wholly within the state. Grogan v. Adams Express Co., 114 Pa. 523; Willock v. R. R. Co., 166 Pa. 184; Hughes v. Penna. R. R. Co., 202 Pa. 222, and Eckert v. Penna. R. R. Co., 211 Pa. 267, were all cases in which shipments were made from one state to another. The decisions of the federal courts have applied a different rule. They sustain the doctrine of the common law that a carrier may not contract for exemption from liability for his own negligence, but hold valid an agreement with the shipper limiting his liability to the agreed valuation in consideration of a lower rate for carriage, the shipper at the same time to have the privilege to insist upon the carrier's liability for the full value of the property on payment of the price of transportation charged according to such value: Hart v. R. R. Co., 112 U. S. 331. Such limitation of liability being

regarded as a lawful means of protection to the carrier against excessive valuation and a proper method of securing a due proportion between the amount for which the carrier is responsible and the freight paid.  And it is this rule which the appellant asks to have applied here.  It is conceded that the law on the subject as announced by the supreme court of the United States is not binding on the courts of this state unless congress has legislated on the subject in the act of June 29, 1906, 34 Statutes at Large, 584.  Prior to that enactment it had been decided by the supreme court of the United States that a statute of a state or rule of law established by the courts of a state declaring void any contract of a common carrier exempting him from, or limiting his liability for, negligence was not in conflict with the legislation of congress on the subject of interstate commerce: Penna. R. R. Co. v. Hughes, 191 U. S. 477.  Such a statute or rule of law had for its object the protection of people of the state in the enjoyment of their rights of property and to secure for them adequate redress for wrongs done within the state, and this is clearly within the authority of the state.  Common carriers like other persons doing business within the territorial jurisdiction of the state are subject to its law.  And in each of the states there are to be found statutes and judicial decisions defining the rights and duties of such carriers and declaring the means by which persons injured by their failure to perform their obligation may be compensated in damages.  It was accordingly held in Chicago, M. & St. P. Ry. Co. v. Solan, 169 U. S. 133, that a carrier exercising his calling within a particular state although engaged in the business of interstate commerce is answerable according to the laws of the state for acts of nonfeasance or misfeasance committed within its limits and that on failure to deliver goods at the time and place the right of action is given by the local law.  That was a case in which a limited liability contract was set up by the railroad company in an action for personal injury received by the plaintiff while engaged in transporting cattle on the defendant's

railroad; a statute of the state of Iowa declaring that no contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from the liability of a common carrier or carrier of passengers which would exist had no contract, receipt, rule or regulation been made or entered into. To the same effect are Smith v. Alabama, 124 U. S. 465; New York, N. H. & H. R. R. Co. v. New York, 165 U. S. 628; Railroad Co. v. Husen, 95 U. S. 465; Hughes v. Penna. R. R. Co., 202 Pa. 222. The conclusion of these cases was reached in accordance with the doctrine that the regulation of the rights and duties of all persons under the jurisdiction of the state belongs in the first instance to the state because of its reserved power to provide for the safety of the persons and property within its territory and that this right is not taken away from it because of the exclusive right of congress to regulate interstate commerce except in cases where the attempted exercise of authority in a state is in conflict with an act of congress or is an attempt to regulate interstate commerce. In Martin v. R. R. Co., 203 U. S. 284, Mr. Justice WHITE after reviewing some of the federal cases bearing on the subject said, "The result of the previous rulings was to recognize in the absence of action by Congress the power of the states to legislate and of course this power involved the authority to regulate as the state might deem best for the public good without reference to whether the effect of the legislation might be to limit or broaden the responsibility of the carrier." These are not in themselves regulations of interstate commerce although they control in some degree the conduct and liability of those engaged in such commerce. It is plainly decided in the case of Hughes v. R. R. Co., 202 Pa. 222, that the interstate commerce legislation up to that time did not control the statutes or decisions of the courts of the states as to the validity of contracts limiting liability for negligence. But the appellant argues that the act of congress of 1906 has that effect inasmuch as it provides "that any common carrier,

railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; provided that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." The apparent purpose of this amendment was to require the carrier to reduce the contract for transportation to writing and to give the holder thereof prima facie title to the property; to render the first carrier liable to the lawful holder of the receipt or bill of lading for any loss caused by such carrier or by any connecting carrier over whose line or lines such property may pass and to forbid exemption of such carrier by contract from the liability imposed by the act. We are unable to discover in the language of this amendment any evidence of an intention to change the rule of law theretofore existing with reference to the measure of damages to which a carrier might be subjected in an action for negligence. The provision for a receipt or bill of lading was evidently to enable the shipper to have the best evidence of the terms of his contract and to avoid controversy as to the title to the property shipped. No form of receipt is prescribed nor is any other liability created than that which makes the first carrier responsible for loss occurring anywhere on the line of shipment. This is a provision in aid of the shipper intended to meet the difficulty often experienced of determining on what part of a route over connecting lines a loss occurred and rendering invalid a contract with the first carrier in which liability for loss is limited to a loss occurring on the line of that carrier. But this has nothing

to do with the measure of damages which is the important subject in this appeal. It was said in Penna. R. R. Co. v. Hughes, 191 U. S. 477, that the interstate commerce laws have contained no sanction of agreements limiting liability to stipulated valuations and that until congress shall legislate upon it there is not any valid objection to a state enforcing its own regulations upon the subject although it may to this extent indirectly affect interstate commerce contracts of carriage; and in Chicago, M. & St. P. Ry. Co. v. Solan, 169 U. S. 133, the court referring to rules prescribed for the construction and management of railroads and designed to protect persons and property said, "They are not in themselves regulations of interstate commerce although they control in some degree the conduct and the liability of those engaged in such commerce. So long as congress has not legislated upon the particular subject they are rather to be regarded as legislation in aid of such commerce and as a rightful exercise of the police power of the state to regulate the relative rights and duties of all persons and corporations within its limits." To the same effect is McLean & Co. v. Denver, etc., R. R. Co., 203 U. S. 38. It cannot be successfully contended that a statute or rule of law of a state declaring what shall be the measure of damages for the breach of a contract of a common carrier to deliver goods to a destination in another state is in any proper sense a regulation of interstate commerce or violative of the constitution of the United States or any law of congress. It may be conceded that the congress might legislate upon the particular subject and give validity to contracts limiting the carrier's liability, but until such action has been taken the statutes or rules of law of the respective states are in force and we are not persuaded by the careful and exhaustive argument of the counsel for the appellant that the amendment of 1906 was intended to at all affect the subject of the right of a common carrier engaged in interstate commerce to contract for exemption from liability for his own negligence or to limit his liability with reference thereto. In

every undertaking of a carrier there is a contract either
expressed or implied and at the time of the enactment of
the amendment referred to the custom was perhaps general
on the part of carriers to give receipts or bills of lading
for the goods accepted for transportation.  If congress
had intended to prescribe the terms or declare the effect
of such a document except as specifically set forth in the
statute it is reasonable to suppose that intention would
have been plainly expressed.  If the act have that effect
the intention can only be ascertained by processes of in-
terpretation and reasoning which are not convincing.  As
the subject is a plain one and adequate language was at
command it seems evident that no such decisive change of
the law as is contended for by the appellant could have
been contemplated.  The intention was not to abridge the
rights of shippers but to correct defects in the preceding
legislation by reason of which they were placed at a dis-
advantage.  This appears not only from the body of the
enactment but also from the proviso continuing to ship-
pers any remedy or right of action had under existing law.
The appellant insists that the words "remedy or right of
action" in the proviso have reference to the method of
procedure and do not relate to the cause of action, but the
enactment bears on the rights of shippers and not on the
legal processes by which their rights might be enforced
and was apparently intended to hold fast the law as it
existed with the addition of the enlarged rights given to
shippers and the increased liability imposed on the carrier.
It is in this sense we think that the term "right of action"
is used by Mr. Justice GRAY in Chicago, M. & St. P. Ry.
Co. v. Solan, 169 U. S. 133, and by Mr. Justice WHITE in
Martin v. R. R. Co., 203 U. S. 284.  The language of the
proviso admits the interpretation that the holder of a ship-
ping receipt is permitted to exert his cause of action for a
negligent wrong in transportation by a common carrier
in the method and with the result allowed according to the
law existing at the time the amendment was enacted.  Our
attention is directed by the appellant to the case of Tul-

644 WRIGHT *v.* ADAMS EXPRESS CO., Appellant.

Opinion of Court below.                    [230 Pa.

lock v. Mulvane, 184 U. S. 497, as a controlling authority.
That was an action on an injunction bond filed in the
circuit court of the United States for the district of Kan-
sas in a proceeding in equity.  Such proceedings in courts
of equity of the United States are regulated by rule
adopted and promulgated by the Supreme Court under the
power given it by congress and it is under one of these
rules that the courts of the United States proceed in re-
quiring indemnity bonds and granting injunctions.  The
decision was based on the reasoning that the bond was
given with reference to the rules of law applicable to such
bonds in the United States courts; that the contract was
with reference to a definite rule of liability and that there
could be no certain general rule by which to determine
such liability except as administered in the federal court;
that the court has the inherent right to set the bond aside
and to determine in its discretion whether recovery could
be had upon it.  If the obligor's liability could be measured
in other courts according to a different standard from that
which controlled in the court which had directed the bond
to be given it might occur that although the latter court
had decreed that the injunction was rightfully issued,
nevertheless in an action on the bond a state court might
hold otherwise and thus subject the obligor to liability
without redress.  The liability of the obligors was deter-
minable according to the measure of liability existing in the
court where the bond was given, and the parties must be
presumed to have contracted according to the law there
prevailing.  It followed as a consequence that the law of
the state of Kansas which permitted the recovery of coun-
sel fees under such a bond could not prevail against the de-
cisions of the federal courts that such a charge was not
costs within the meaning of the obligation.  There the
rule of court and the order of the chancellor determined the
character of the bond and the extent of its obligation.  The
amendment of 1906 to the interstate commerce legislation
has no such effect.  It neither prescribes the form of a bill
of lading nor fixes the measure of liability thereunder.

The second position for which the appellant contends is that the shipper obtained transportation at less than the regular rate by undervaluing the goods and that the contract is therefore illegal and that at most recovery could not be had for more than the value on which the freight charge was paid. If a case were presented of one who had fraudulently obtained an undervaluation of goods in order to secure a lower transportation charge the question would be one worthy of serious consideration, but the facts agreed upon do not furnish a foundation for the argument presented. The shipper did not know that the appellant had an advertised schedule of rate nor what the appellant charged in this case at the time the goods were received nor what the provisions of the shipping bill were. Her agent transacted the business in her absence. She did know that express charges were based on the value of the goods, but it does not appear that she knew what the minimum value to be carried at the fixed charge was. Nor do the facts stipulated show any fraudulent conduct or intention to deceive on the part of the plaintiff's servant. He had no knowledge of the published schedule of rates nor what the rates were, nor did he know the conditions set forth in the bill of lading. He told the truth when he informed the defendant's agent that he did not know the value of the furs. When he gave that statement no further inquiry was made on the subject and the goods were promptly receipted for without knowledge on the part of the company of their value. The facts leave no room therefore for argument on the theory of a deception practiced by the plaintiff. There was no thought in the mind of the plaintiff or of the defendant of accepting or granting a concession or preference in the matter of rates. It would work a great hardship on many innocent shippers to hold that where one in good faith delivered his goods to a carrier for interstate transportation and paid the rate demanded without knowledge of the schedule of rates or what the rate actually was he rendered himself powerless to insist in a legal tribunal that he have his goods or their

value. If the plaintiff had seen the shipping receipt when the goods were received by the defendant she could not have learned therefrom that she was getting a lower rate than was given to others under like circumstances. Preferences were forbidden by the interstate commerce legislation in force at the time the amendment of 1906 was adopted, but this did not prevent a recovery in Penna. R: R. Co. v. Hughes, 191 U. S. 477. Our conclusion is that the courts of this state have not been deprived by the interstate commerce legislation of the power to enforce the doctrine established in this state that the contract of a common carrier limiting his liability for negligence is contrary to public policy and therefore void.

The judgment is affirmed.

*Errors assigned* were the judgments of the Superior Court.

*John Lewis Evans*, with him *Thomas DeWitt Cuyler*, for appellant.

*George Wharton Pepper*, and *Alfred Aarons*, with them *Louis W. Robey, W. B. Bodine, Jr., Henry N. Wessel* and *A. M. Holding*, for appellees.

Per Curiam, March 20, 1911:

A difference in the facts gave rise in each of these cases to questions of minor importance not found in the others, but on the main question on which the appeals were allowed and to which the arguments were confined, they are alike. The judgment of the Superior Court in each case is affirmed on the opinion of Judge Henderson in Wright v. Adams Express Co., 43 Pa. Superior Ct. 40.