Opinion by
Head, J.,
There is nothing in the defendant’s affidavit to negative any one of the following propositions: The defendant was and is a common carrier engaged in the transportation of merchandise between various points, among them the city *484 of Harrisburg in Pennsylvania and the city of New York. The plaintiff delivered to it a package of goods in Harrisburg for transportation to New York. The value of the package so delivered was $160. The defendant, in violation of the obligation created by the law under such circumstances, failed to transport and deliver the said package at its destination, and the same was lost through its negligence. How then does it seek to defend against the liability to account to the plaintiff for the value of his goods thus lost or destroyed through its own negligence? Certainly not by reason of any rule or regulation in the nature of a stipulation or contract made by itself to relieve itself in whole or in part from the liability to account for what had been lost or destroyed by its negligence. We do not understand that we are asked in this case to depart from the long-established policy of the state of Pennsylvania in this regard.
Nor can the defendant’s liability be extinguished or limited because the congress of the United States has enacted a statute requiring the defendant and other common carriers to maintain and publish open schedules of rates for transportation and in every case to issue a bill of lading to the shipper. These questions were fully considered in Wright v. Adams Express Co., 43 Pa. Superior Ct. 40, affirmed by the Supreme Court of Pennsylvania in 230 Pa. 635, and for the purposes of this case at least must be considered at rest. In what material respect does the present case differ from that last cited? There it appeared that the plaintiff knew that the express charges were based on the value of the goods. Here the affidavit avers the same knowledge on the part of the present plaintiff. In the Wright case the defendant asked for a valuation by the shipper but none was given, the package having been delivered to the company by a servant of the owner who was without knowledge of the contents of the package or their value. Here no value was asked, and, as a consequence, none given. In the Wright case, as in this, the carrier thereupon undertook to fix the value of the *485 package, and having done so, it issued the bill of lading required by the act of congress. This bill in each case contained a stipulation that the carrier should not be liable for more than the valuation stated in the bill of lading even though it should appear that the actual value of the goods was greater and that they were lost by the carrier’s own negligence. It was there held that there was nothing in the acts of congress which had the effect of overthrowing the long-established policy of the state of Pennsylvania which refuses to recognize any right in a common carrier to contract or stipulate for a limited liability where the loss results from its own negligence.
If this case is to be distinguished from the Wright case and the many others following it, the distinction must rest upon some consideration outside of those already referred to. The affidavit in the present case, in one respect and in one only, attempts to so classify this case as to exclude it from the operation of the principles declared in the Wright case and the numerous ones that have followed it. It is here averred that the plaintiff knew not only that the defendant company’s rates for transportation varied according to the value of the goods to be carried, but also that he knew, when he failed to state a greater value than $50.00, the charges would be assessed upon a value not exceeding that sum, and the liability of the company, in case of the loss of the goods, would be limited to the same amount. It is then argued that the plaintiff, with this knowledge, having failed to state the value of the goods, although not asked to do so, had in fact “knowingly and willfully, by false billing, false classification, false weighing, false representation of the contents of the package, or false report of weight, or by other device or means, obtained transportation for property at less than the regular rates then established and in force on the line of transportation,” and as a consequence had committed a misdemeanor forbidden by the interstate commerce act and the statutes of the United States supplementing and amending it. It is therefore argued that the plaintiff *486 knowingly entered into an unlawful and forbidden contract and that his present action, founded upon such illegal contract, cannot be enforced on the principle that the courts will lend no aid to a party seeking to enforce a contract forbidden by law.
In Howard v. American Express Co., 47 Pa. Superior Ct. 416, this court, speaking through Judge Hendekson, thus stated the nature of the plaintiff’s right and the defendant’s liability: “If the plaintiff were seeking to enforce a contract her demand would be controlled by the agreement out of which her action grew, but the case is not based on a contract. It has its foundation in the fact alleged that the defendant owed a duty to the plaintiff to carry safely and deliver the property, which duty it negligently failed to perform. The provision of the receipt limiting the liability of the carrier was void as against a loss through negligence, and it was not incumbent on the plaintiff to plead such a contract or to base an action thereon. The defendant’s duty did not result from, nor was it measured by, the terms of the receipt. The acceptance of the property for carriage established the duty in accordance with the rule of liability existing at common law. This might be modified by agreement but not in a way to relieve the company from the penalty for its own negligence.” In Blackburn v. Adams Express Co., 43 Pa. Superior Ct. 276, following the Wright case, we declared that these statutes of the United States “did not affect the subject of the measure of damages in an action in Pennsylvania against a common carrier for negligence; that the particular subject was not legislated upon and that without such legislative action the rule in Pennsylvania remains unchanged.” In the Wright case the form of the action was trespass. In the Blackburn case it was assumpsit. But in each case the liability of the carrier was rooted in the breach of the duty cast upon it by the law upon the receipt by it of the goods of the shipper for transportation. Whether, after a negligent loss of the property, the plaintiff undertook to recover by an action of assumpsit or trespass in no way *487 affected the measure or extent of the liability of the carrier.
It is true the acts of Congress, which had for their object such control of the operations of carriers engaged in interstate commerce, as to prevent discriminations in favor of one particular shipper as against another or all others, declared that certain acts on the part of shipper or carrier designed to bring about such forbidden discrimination should be misdemeanors punishable by fine and imprisonment. Such misdemeanor might be committed either by the shipper or the carrier or both without regard to the performance or nonperformance of the legal duty of the carrier to transport the goods. The shipper might be indicted and convicted of the misdemeanor where his goods had been safely carried and delivered, or where they had been negligently lost, and the same is true of the carrier. Certainly the statutes contain no language expressive of an intention of Congress that where either or both had committed a misdemeanor and the goods had been negligently lost, the carrier should be under no liability to account for them. The undertaking of a carrier which has received the goods of a shipper to transport them to destination is a primary one cast upon it by the law, and has no necessary relation to the rate for such transportation upon which it and the shipper may agree. It may well be that the congress, for the common good, might undertake to regulate the rates which a carrier should charge without intending or undertaking to affect the legal obligation of the carrier to transport the goods safely or respond in damages for its negligent failure to do so.
If the present case can be properly regarded as ruled either by Connolly v. Union Sewer Pipe Co., 184 U. S. 540, or by Continental Wall Paper Co. v. Voight, 212 U. S. 227, it seems clear enough to us that the former and not the latter should be held to be controlling. The present plaintiff is not seeking to enforce a contract which “was in fact and was intended by the parties to be based upon *488 agreements that were and are essential parts of an illegal scheme.” On the contrary, the plaintiff’s right of action is to be found in a negligent breach by the defendant of a duty imposed upon it by the law. This duty existed altogether apart from any question as to the amount of the consideration paid, for the performance of the duty. That duty would neither increase nor diminish with the increase or decrease of the rate charged by the company, but would remain the same regardless of the acts of the parties in fixing the amount of the carrier’s compensation. If in this respect either or both of them did an act prohibited by the laws of the United States, either or both may be indicted, convicted and punished therefor without in any way affecting the primary obligation of the defendant carrier to safely transport the shipper’s goods or respond in damages for their negligent loss.
We are of opinion that the defendant has shown no case which can be properly regarded as outside the ordinary principles upon which its liability rests which have been so often declared in numerous recent cases. The learned court below was therefore right in holding that the defendant exhibited no legal defense to the plaintiff’s claim.
Judgment affirmed.